We'll proceed to the third case of the day, the Fisheries Association v. Atlantic States case, and we will hear from the appellate's counsel, Mr. Butera. Good morning, your honors. May it please the court? Yes, my name is James Butera, and this is Mr. Mann, who is the co-counsel for the appellate's in this case. The case is correctly identified as a constitutional case, and we will be advancing two points before the court this morning with respect to that. One, that the regulation which is in contest here at this proceeding is unconstitutional, and as well, the organization promulgating the regulation, Atlantic Commission, is in itself unconstitutionally structured at this time, for reasons which we will explain, I'm sure, in our brief. So why didn't you sue Maryland instead of this Congress? Because the regulation in case here is promulgated by the commission, your honor. But the regulation came from Maryland. They only recommended it to Maryland. Well, fundamentally, let's go back to the basis. You got a compact of the various states. The compact itself then makes a recommendation. The legislature of that state acted. Maryland actually objected to it, didn't want to do it, didn't appeal this objection to this amendment, and as a result of that, Maryland enacted this regulation. So why didn't you sue Maryland? Because the action by Maryland is coerced and must be implemented, your honor, because the legislation in 1984 changed the entire constitution, construction rather, of the commission. It went and said it from a federal standpoint, and I'll read it from here. It says, the commission shall prepare and adopt. Maryland can leave that compact. It's not coerced to stay in that compact. But if they leave the compact and are thus not in conformance with the regulation, then another regulatory power of this commission is to report that to the Secretary of Commerce that they are in noncompliance, which can result in complete ban of fishing in the Chesapeake Bay and all the other tributaries in which the Maryland fishermen may proceed. I don't think there's any question here. I see where you're going with it in terms of standing. Standing is a legal question, and it doesn't just apply what it looks like or what it sounds like. It's a legal question. And so when you think about it, if Maryland had not actually enacted or brought forth this regulation to its legislature, could this pact have sanctioned you? Could it sanction you? Your client. Oh, our client. Not you. I'm sorry, Your Honor. Yes, it could, because they could take advantage of the Magnuson-Stevens Act, which allows for penalties enforced by the Coast Guard to anybody violating a regulation. Absolutely, Your Honor. Let me ask you this question. It seems to me on this constitutional issue, you raised it for the first time on appeal. Is that right? No, Your Honor. We had raised it from the very start that it's a constitutional issue because, of course, it's a Fifth Amendment taking, which starts with that. And then we also raised it from a constitutional standpoint. I'm talking about the framework of the compact. On the commandeering angle, you're asking? Framework of the compact. It seems to me that you raised that issue for the first time on appeal. I understand it's a Fifth Amendment taking case, but as to the framework, is it exactly in the case or for the first time on appeal? No, and perhaps this will help explain it. We respectfully disagree with you there, Your Honor. So this was in 1942 that this commission was established, and it was completely advisory in that connection, as are the two other interstate compacts here that we have in the United States. But in 1984, what happened was that they mandated the section that I just read, which put enforcement powers into the commission. Now, with respect, again, Judge Wynn, to your point, the Supreme Court has said in Bennett v. Speer that it does not matter whether the injury complained of has an independent third-party action, in your case, the state of Maryland. That does not exclude injury produced by the determinative or coercive effect upon the application of another person, which is the commission in this case. Judge, my question is whether you raised this below. Is this the first time this constitutional issue has been raised on appeal? No, sir. Tell me where in your complaint that you challenged the constitutionality of the commission or its structure. Is that in your complaint? I can't find it. I might be half-blind. What was the sentence that you first said? I apologize for my hair. The first part that you said was omitted? My question was, I can't find in your complaint that you challenged the constitutionality of the commission or its structure. Did you do that in your complaint? Yes. Yes, we do, Your Honor. Where is it in your complaint? Well, it's where the point where we say the commission was established in 1942. Well, do you have your complaint in front of you? Because we do. Maybe you could point us to a JA site where you raise in your complaint that the commission is unconstitutionally established. I do not have it, Your Honor. I don't think we do, but what happened was in 1942 it was founded. You would have it at your desk that when you come back, I think you have some time to come back, why don't you look at it and point us in your complaint what that allegation is. But part of our constitutional issue clearly raised in the complaint is that when this commission was established in 1942, it was ratified by the Congress. When it was changed in 1950, it was again ratified by the Congress. But then in 1984 when the entire enforcement portion of this issue was placed, that was never ratified by the Congress. And our constitutional question goes to this. The United States Congress does not have the ability to alter a compact between the states. It can ratify it, it can decline to ratify it, but it is not allowed to pass a law. And this does get to the commandeering aspect of our case. It is not allowed to tell the states that they must enforce the law. The theory behind that is when the parties are harmed, in our case, of course that would be the boat captains, they look to the state as the first party and the last party to do a regulation. But all the enforcement and the power itself comes from the federal government. Let me just read, if I may, from the executive director of the commission. He said before the Congress in 1950, the commission gave the authority to, I'm sorry, the Congress gave the commission the authority to require states to implement mandatory provisions which the states must follow. Everybody agrees with that. The attorney general of the state of North Carolina said the Atlantic Coastal Act enacted by the Congress expanded the ASMFC power to make its decisions binding on the states without, Your Honor, the consent of the states. So the force behind this exercise is entirely the federal mandate onto the commission, and then finally you have the state of Maryland, which just adopts the regulation to their state in conformity. So do you have any indication that Maryland would change course even if this amendment were enjoined? Do you have any indication? No. In fact, they've told us quite to the contrary. We asked them to.  So then how do you have standing? How can enjoining this addendum redress any injury to you if Maryland has told you they're not going to change course? Because they will have to. That will be required by law. No, no, no. All you're asking us to do right now is to grant a preliminary injunction. We're not reaching, I don't think. What are you asking? Well, perhaps this is the best way to explain it. Aren't we here on the denial of your motion for an injunction? Yes. Okay. So we're not reaching the merits today. I understand, Your Honor. So how is, even if we agreed with you and enjoined this addendum, how does that help you? Because Maryland's not going to change course. What Maryland said to us, we're not going to help you in this regard. We have a letter from the Attorney General's office because we are afraid there will be a complete moratorium on striped bass fishing in the Chesapeake Bay. Now, if that were to be removed, then Maryland, by logic of their prior behavior, would presumably go back to the position where they say, we do not want to be enforcing this because, as Mr. LeWitt . . . Oh, you're saying that somewhere down the road, presumably Maryland may go back to saying they don't want this regulation, even though two minutes ago you said that they conclusively told you they're going to stick with it. No, they just said that they would not appear in the case that was pending below when the trial judge . . . That was the judge's very first question. Why didn't you sue Maryland? Well, because both parties are in the chain of causation here. And what's the irreparable harm to your client? The effect of this regulation was to drive their business down 70%. When we said that in our complaint, at that point we thought it would be 50%, but it turned out to be much worse. By the time we filed our documents, it was at 70%. Isn't this regulation intended to save and preserve the striped bass? That certainly is the purported purpose. Your Honor, it is. So if you take that at face value, without this, then the striped bass could become extinct, and your client would lose 100% of its business. Wouldn't that be worse? No, theoretically, of course what you're saying is true, but that presumes on the merits that the remedy at hand here is first justified and second would be effective. And let me say this, and perhaps that will help. This is the commission document, and it says, Striped bass is not experiencing overfishing. This is a critical point for the very question that you raised, your Honor. If the striped bass are not subject to overfishing, then how can this regulation, which was prepared and adopted by the commission pursuant to federal law, So if overfishing is not the problem, how can a regulation which further limits fishing make any sense? The regulation is actually from the state of Maryland. The commission made the determination to indicate to Maryland to proceed in this matter. Maryland could choose to do so. Maybe it was coerced or whatever, but it did it, independent with the legislature, notwithstanding it didn't want to. So the regulation is from Maryland. Well, I agree with you on the final step, but again, looking to the Attorney General's opinion in North Carolina, which is I think shared widely, the act expanded the commission's power to make its decisions binding on the states and defining without their consent. I mean, I don't know how that could be more mandatory. And so Maryland is just So you're challenging the constitutionality of this, and are you doing it via Section 1983? We're doing it of all the above. Yes, we do believe in 1983. It doesn't have an enforcement provision in it. So in order to be able to take a constitutional challenge, you've got to have a vehicle to do it. You can't come under the APA. It's not available. No. So the vehicle, it seems like I think you articulated the Section 1983. And we did assert that in our complaint. Well, granted that, but I just wanted to get agreement. That's what you wanted, the Section 1983. Among others, Your Honor, we feel that Tell me what the among others is. United States Constitution That you can sue for a constitutional violation other than Section 1983. Well, we would point to Marbury v. Madison, Your Honor. That says where there has been a harm, everyone in the United States is entitled to a remedy in court. And as far as the comment about the APA, we would say that the APA is not the source of our due process and constitutional objections. Let's talk about Section 1983. How is it that this compact is a person under Section 1983? Well, I'm glad you asked that question because as we know, states are not considered to be persons. But this is not a state, Your Honor. This is not even a collection of states. This is an interstate compact, which in 1942 when the Congress ratified it, defined it as a body corporate. Not a body politic, but a body corporate. And so we believe that they are clearly acting under color of law, color of state law. So I think on this question of who regulates whom, it's pretty clear. And, in fact, I wanted to point out here is a Fourth Circuit case. Let me give you a chance to further develop the thought you just brought up that it is a person because it's, I guess, a compact or something different. But I don't know of a case that has held that. In fact, the cases that was a Washington area metropolitan transit authority, they said that's not a person. So a lack of governmental situation. And you've got to be a person in order to be able to sue under Section 1983. So tell me, do you have a case? Do you got a case when you come back and tell me where your case is?  We're here really on a case of first impression. The one that you just mentioned was an employment case. There's another one with respect to a government contract. But here we are talking about individual. So you're saying this will be a question of first impression. It is. We believe it is, Your Honor. You want us to independently determine that this compact is a person under Section 1983. Well, we would argue that, Your Honor. But I want to say again that that is not the sole reliance on why we are here before the Court today. We are here before the Court today not on the basis of Section 1983, not on the basis of the APA, but on the bill of rights. Bill of rights in Marbury v. Madison. Well, yes, it followed in 1803 by appointment. And nowhere in the 231 years since Marbury v. Madison was decided does somebody say, well, you have to go check with your Attorney General to come before the Court. That's the position that we are taking. And, Your Honor, to go back to your question, it's so dramatic here. We do a lot of regulation for industries at the federal and state level, but this one is very different because we were never projecting the irreparable harm as often is the case when you're looking at a regulation, but it's 90 days effective. Mr. Voteric, we've given you some extra time. What we'll do is we'll see you from the other side, and we'll come back and hear you on. I appreciate that, Your Honor. Thank you. Mr. Donohue. May it please the Court. Sean Donohue for the Appali Atlantic States Marine Fisheries Commission, and with me at council table is my colleague, Carrie Davidson, and behind her is Robert Beal, who is the Executive Director of the Commission. The District Court did not abuse its discretion in denying a preliminary injunction in this case. As the Court noted, there are . . . That's the issue, Stan. Yes. As the Court noted, this was a Maryland regulation that actually is what affects what fishermen, fishers can do, and there are reasons we would concede that Maryland adopted the particular one fish bag limit in response to the Commission's plan. Were they coerced into it? Mr. Voteric said they were coerced into it. I don't think it's fair to think of anything in this regime as coercion. As the Court noted, as you noted, Judge Wynn, the member states all continue to be voluntarily associated with this compact that they entered into decades ago. Any state can drop out, and contrary to what my friend said, if a state actually withdrew from the compact, that has not happened before, but it would no longer be subject to this regime. It would lead to a very different one, and it would not be subject to the requirement that it follow the Commission's plan. So that's not what we have. We submit that the real standing problem here is redressability because there is reason to think that Maryland would not rescind this regulation. As we noted in our brief, Maryland actually adopted additional measures, including counsel. And I thought I heard opposing counsel confirm that Maryland has said they won't reverse course. Yes, I'm not aware of any sign that they have said that they would, and I think the fact that Maryland didn't take advantage of the internal Commission appeal process, it also would have the right to bring its own action in court to challenge the plan. And then there is just a conservation problem here, contrary to what my friends assert. I was going to ask you about that. I'm not sure what he was reading from when he said the striped bass are not subject to overfishing because I'm reading the record. He's referring to a nettlesome sort of terminological sort of issue, and that is the distinction between overfishing, which is removing fish from the stock at a rate that is unsustainable and driving the numbers down further, versus overfished. And the Commission has found, and scientists have repeatedly found, that the stock remains overfished. That is, the biomass, the total number of fish out there, is well below what it should be, and the Commission is in a process of trying to rebuild the stock to the healthy level that it was before. And, of course, as the Court is aware, this stock, which is so important up and down the Atlantic coast for recreation, for sort of its embedded in the culture of many states, it collapsed severely in the 80s. And as you see in the record here, there are knowledgeable, scientifically well-grounded people who are worried about the signals that, particularly recruitment of the younger fish into the fishery that can be caught. It has been low, not just for one year, but for many years, and that's something that's been, you know, is clear in the record. And that's what the Commission is attempting to deal with here. If I may, I would like to point out that the very broad constitutional claim that was asserted here, that the Commission itself is unconstitutional, it's structurally invalid, and I think the implication would be that this interstate entity that has been successfully operating for many decades, sort of everything it does is in question. Let me make sure I posture this case where we are. The first question I think we deal with is the question of standard. We decide there's no standing, that's the end of this. Is that right? I think so, Your Honor. If we decide there is standing, then we address the constitutional issues, the issues being due process, a takings clause. Those are the ones that were raised below. A constitutional challenge in terms of the whole compact, that it's not constitutional. Due process only gets down to Section 1983 from my perspective, and it would be difficult to establish as a person. I agree with all that. I think the structural, what we might call the structural challenge that my friend articulated, I think that I don't think he's going to be able to find where in the complaint they raised that. We didn't brief that below. It's obviously a highly consequential claim. We disagree with it strongly, but I don't think it would be appropriate to reach that in a PI review where it wasn't raised. What about the takings clause? Takings clause was raised, and for the reasons, you know, assuming standing for the reasons we lay out in our brief, we don't think there's a taking here, that when a manager of public resources like this, which is attempting to protect the resource for everyone, makes a decision to reduce, in this case, to require a particular subset of the fishery to abide by the rules that other subsets of the recreational fishery already have to abide by. What's the remedy for taking? Pardon? What's the remedy for taking? Normally it would be to bring an action in the court of claims, and that's another issue. It would not be to say that the agency's conservation rule is invalid. In other words, can you get injunctive relief? Right. I don't think so. I think there are a lot of problems with the claims here, and so I want to take seriously because they're all consequential. We think the commission believes that the rule that's attacked here, Addendum 2, is important to conservation. Obviously most consequential is the claim that everything the commission's done for decades, and this is, I would submit, that there is a sort of fashion right now to sort of attack institutions and claim that institutions that have been working well are somehow fundamentally defective, and I think we should be very careful about entertaining those kinds of claims, particularly when they haven't been raised in the normal legal process. And your response as to whether the ASMFC itself is unconstitutional is probably preliminary. You don't think it's in that complaint? Correct. We dispute. We think it is a compact that's been around. It reflects sort of double legitimacy in our system. The states have approved it, and Congress has repeatedly approved it, and Congress has enacted, it is true, subsequent legislation that recognizes that the commission exists and has certain capacities and works with states, and the states from Maine to Florida, red states and blue states, have worked cooperatively on really hard issues that almost necessarily cause pain sometimes when we're trying to protect a common resource, and it's never completely clear what the right answer is, but the commission has a process to arrive at answers that reflect everyone's input. In this case, there were 2,000-something comments just on Addendum 2, the very sort of short-term measure at issue here. There were many thousands more on Amendment 7 that sort of set up the framework, and so we think that before anyone sort of casually says this whole process is unconstitutional, at least it should be properly pled and briefed by parties and so forth. So I think we win that argument, but I also think it's not even properly presented. All right. Let me ask Judge Floyd. Do you have any more questions, Judge Floyd? No, sir. Just a second. Well, thank you for your argument. We'll hear some rebuttal from the appellate. Thank you, Your Honor. We do have our complaint here electronically. The interest of the plaintiffs have been adversely affected. What paragraph are you reading from? 9-1. 9-1. The interest of the plaintiffs have been adversely affected and manifest injustice has resulted from defendant's arbitrary, capricious, and unconstitutional action. I do want to make up . . . They're actions. Actions. I think Judge Floyd's question was whether you had raised below or in your complaint your allegation that the entire commission is unconstitutional. We did not in our complaint. Okay, because he could find it and he was correct. We did in the subsequent court documents. On the compact issue, I do want to read this. Congressional Research Service, which is a bipartisan organization that surveyed these, and they said this in one of their recent reports. Is that in the joint appendix what you're reading from? Is that in the record? I'm almost certain it is, Your Honor. I'm sorry, I can't say it at all. Almost certain what it is? It is. It is. And I have the document. Okay, go ahead. It says that the compacts can preempt inconsistent state law, going to the state law question, but no court may order relief inconsistent with the compacts terms unless the terms violate the Constitution. And we set forth this constitutional objection, and while it was an additional argument in our subsequent documents to the court, that we are under the standard rules of federal procedure, I think allowed to make additional arguments on the same principle, the U.S. Constitution, in this case. And that's only what we are doing here is saying these grounds were unconstitutional. Here were the reasons in the complaint. Here is what we said in the documents. And here the anti-commandeering argument I think is unaddressed in all the cases that have gone before us and is appropriate for us to get back there and argue with the merits. In the meantime, right now we're looking at developments with respect to the 2025 fishing season, and our clients, customers, are sitting on the sidelines again as they did as soon as they heard the news that they were only allowed to catch one fish versus the way they've done it in the past 15 years. Well, they can catch more than one. I'm sorry. They just can't keep more than one, correct? They can catch and release as many as they want, right? They just can't keep more than one. Well, you could release it, yes. Right, yeah. Yes, you're right about that. But people want to catch the fish, take a picture of it, and take it home and eat it. Sometimes. Thank you for your time, Ron. Thank you very much. Thank you both counsel for your arguments today, Mr. Patera and Mr. Donahue. The court is going to come down and greet counsel. Judge Floyd, are you prepared to go to the final case? Yes, Your Honor. Then we will go to the final case for the day. Thank you.
judges: James Andrew Wynn, Stephanie D. Thacker, Henry F. Floyd